UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| DANIELLE N. GRESHAM, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 4:17 CV 2674 ACL |
| | ) | |
| NANCY A. BERRYHILL, | ) | |
| Deputy Commissioner of Operations, | ) | |
| Social Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM**

Plaintiff Danielle N. Gresham brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the Social Security Administration Commissioner's denial of her application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act.

An Administrative Law Judge ("ALJ") found that, despite Gresham's severe impairments, she was not disabled as she had the residual functional capacity ("RFC") to perform work existing in significant numbers in the national economy.

This matter is pending before the undersigned United States Magistrate Judge, with consent of the parties, pursuant to 28 U.S.C. § 636(c). A summary of the entire record is presented in the parties' briefs and is repeated here only to the extent necessary.

For the following reasons, the decision of the Commissioner will be affirmed.

**I. Procedural History**

Gresham filed her application for SSI on April 10, 2014, claiming that she became unable to work on February 10, 2011. (Tr. 148.) In her Disability Report, Gresham alleged disability

due to regional pain syndrome, reflex sympathetic dystrophy ("RSD"),[1] depression, learning disability, anxiety, limited use of the right arm, and pain. (Tr. 257.) Gresham was 27 years of age at the time of her alleged onset of disability. Her applications were denied initially. (Tr. 151-56.) Following an administrative hearing, Gresham's claims were denied in a written opinion by an ALJ, dated July 27, 2016. (Tr. 73-93.) Gresham then filed a request for review of the ALJ's decision with the Appeals Council, which was denied on August 25, 2017. (Tr. 1-6.) Thus, the decision of the ALJ stands as the final decision of the Commissioner. *See* 20 C.F.R. §§ 404.981, 416.1481.

In this action, Gresham argues that the ALJ "failed to properly consider RFC." (Doc. 18 at 5.)

## II. The ALJ's Determination

The ALJ first found that Gresham had not engaged in substantial gainful activity since April 10, 2014, the application date. (Tr. 78.) In addition, the ALJ concluded that Gresham had the following severe impairment: RSD of the right upper extremity with complex regional pain syndrome ("CRPS").[2] *Id.* The ALJ found that Gresham did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. (Tr. 80.)

As to Gresham's RFC, the ALJ stated:

> After careful consideration of the entire record, the undersigned

---

[1] RSD is a disorder that causes lasting pain, usually in an arm or leg, and it occurs after an injury, stroke, or heart attack. *See* WebMD, http://www.webmd.com/brain/what-is-reflex-sympathetic-dystrophy-syndrome#1 (last visited March 6, 2019).

[2] CRPS is another, more general, term for RSD. *See* WebMD, http://www.webmd.com/pain-management/guide/complex-regional-pain-syndrome#1 (last visited March 6, 2019).

> finds that the claimant has the residual functional capacity to
> perform light work as defined in 20 CFR 416.967(b) except she can
> never climb ladders, ropes, or scaffolds. She cannot be exposed to
> unprotected heights. She can occasionally push, pull, lift overhead,
> or in any direction, with the right upper extremity. She can
> occasionally finger or handle with the right dominant hand.

(Tr. 81.)

The ALJ found that Gresham was unable to perform any past relevant work, but was capable of performing other jobs existing in significant numbers in the national economy, such as information clerk, hostess, and ticket taker. (Tr. 85-86.) The ALJ therefore concluded that Gresham was not under a disability, as defined in the Social Security Act, since April 10, 2014, the date the application was filed. (Tr. 87.)

The ALJ's final decision reads as follows:

> Based on the application for supplemental security income filed on
> April 10, 2014, the claimant is not disabled under section
> 1614(a)(3)(A) of the Social Security Act.

(Tr. 88.)

### III. Applicable Law

### III.A. Standard of Review

The decision of the Commissioner must be affirmed if it is supported by substantial evidence on the record as a whole. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002). Substantial evidence is less than a preponderance of the evidence, but enough that a reasonable person would find it adequate to support the conclusion. *Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001). This "substantial evidence test," however, is "more than a mere search of the record for evidence supporting the Commissioner's findings." *Coleman v. Astrue*, 498 F.3d 767, 770 (8th Cir. 2007) (internal

quotation marks and citation omitted). "Substantial evidence on the record as a whole . . . requires a more scrutinizing analysis." *Id.* (internal quotation marks and citations omitted).

To determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole, the Court must review the entire administrative record and consider:

1. The credibility findings made by the ALJ.

2. The plaintiff's vocational factors.

3. The medical evidence from treating and consulting physicians.

4. The plaintiff's subjective complaints relating to exertional and non-exertional activities and impairments.

5. Any corroboration by third parties of the plaintiff's impairments.

6. The testimony of vocational experts when required which is based upon a proper hypothetical question which sets forth the claimant's impairment.

*Stewart v. Secretary of Health & Human Servs.,* 957 F.2d 581, 585-86 (8th Cir. 1992) (internal citations omitted). The Court must also consider any evidence which fairly detracts from the Commissioner's decision. *Coleman*, 498 F.3d at 770; *Warburton v. Apfel*, 188 F.3d 1047, 1050 (8th Cir. 1999). However, even though two inconsistent conclusions may be drawn from the evidence, the Commissioner's findings may still be supported by substantial evidence on the record as a whole. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001) (citing *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000)). "[I]f there is substantial evidence on the record as a whole, we must affirm the administrative decision, even if the record could also have supported an opposite decision." *Weikert v. Sullivan*, 977 F.2d 1249, 1252 (8th Cir. 1992) (internal quotation

marks and citation omitted). *See also Jones ex rel. Morris v. Barnhart*, 315 F.3d 974, 977 (8th Cir. 2003).

**III.B. Determination of Disability**

A disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. § 416.905. A claimant has a disability when the claimant is "not only unable to do his previous work but cannot, considering his age, education and work experience engage in any kind of substantial gainful work which exists … in significant numbers in the region where such individual lives or in several regions of the country." 42 U.S.C. § 1382c(a)(3)(B).

To determine whether a claimant has a disability within the meaning of the Social Security Act, the Commissioner follows a five-step sequential evaluation process outlined in the regulations. 20 C.F.R. § 416.920; *see Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007). First, the Commissioner will consider a claimant's work activity. If the claimant is engaged in substantial gainful activity, then the claimant is not disabled. 20 C.F.R. § 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see "whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities." *Dixon v. Barnhart*, 343 F.3d 602, 605 (8th Cir. 2003). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby*, 500 F.3d at 707; *see* 20 C.F.R. §§ 416.920(c), 416.921(a).

The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 416.921(b). These abilities and aptitudes include (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. *Id.* § 416.921(b)(1)-(6); *see Bowen v. Yuckert*, 482 U.S. 137, 141 (1987). "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on his ability to work." *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (internal quotation marks omitted).

Third, if the claimant has a severe impairment, then the Commissioner will consider the medical severity of the impairment. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled, regardless of age, education, and work experience. 20 C.F.R. §§ 416.920(a)(4)(iii), 416.920(d); *see Kelley v. Callahan*, 133 F.3d 583, 588 (8th Cir. 1998).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's RFC to determine the claimant's "ability to meet the physical, mental, sensory, and other requirements" of the claimant's past relevant work. 20 C.F.R. §§ 416.920(a)(4)(iv), 416.945(a)(4). "RFC is a medical question defined wholly in terms of the claimant's physical ability to perform exertional tasks or, in other words, what the claimant can still do despite his or his physical or mental limitations." *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (internal quotation marks omitted); *see* 20 C.F.R. § 416.945(a)(1). The claimant is responsible for providing evidence the

Commissioner will use to make a finding as to the claimant's RFC, but the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. § 416.945(a)(3). The Commissioner also will consider certain non-medical evidence and other evidence listed in the regulations. *See id.* If a claimant retains the RFC to perform past relevant work, then the claimant is not disabled. *Id.* § 416.920(a)(4)(iv).

Fifth, if the claimant's RFC as determined in Step Four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to prove that there is other work that the claimant can do, given the claimant's RFC as determined at Step Four, and his or his age, education, and work experience. *See Bladow v. Apfel*, 205 F.3d 356, 358-59 n.5 (8th Cir. 2000). The Commissioner must prove not only that the claimant's RFC will allow the claimant to make an adjustment to other work, but also that the other work exists in significant numbers in the national economy. *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); 20 C.F.R. § 416.920(a)(4)(v). If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, then the Commissioner will find the claimant is not disabled. If the claimant cannot make an adjustment to other work, then the Commissioner will find that the claimant is disabled. 20 C.F.R. § 416.920(a)(4)(v). At Step Five, even though the burden of production shifts to the Commissioner, the burden of persuasion to prove disability remains on the claimant. *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

The evaluation process for mental impairments is set forth in 20 C.F.R. §§ 404.1520a, 416.920a. The first step requires the Commissioner to "record the pertinent signs, symptoms, findings, functional limitations, and effects of treatment" in the case record to assist in the

determination of whether a mental impairment exists. *See* 20 C.F.R. §§ 404.1520a(b)(1), 416.920a(b)(1). If it is determined that a mental impairment exists, the Commissioner must indicate whether medical findings "especially relevant to the ability to work are present or absent." 20 C.F.R. §§ 404.1520a(b)(2), 416.920a(b)(2). The Commissioner must then rate the degree of functional loss resulting from the impairments in four areas deemed essential to work: activities of daily living, social functioning, concentration, and persistence or pace. *See* 20 C.F.R. §§ 404.1520a(b)(3), 416.920a(b)(3). Functional loss is rated on a scale that ranges from no limitation to a level of severity which is incompatible with the ability to perform work-related activities. *See id.* Next, the Commissioner must determine the severity of the impairment based on those ratings. *See* 20 C.F.R. §§ 404.1520a(c), 416.920a(c). If the impairment is severe, the Commissioner must determine if it meets or equals a listed mental disorder. *See* 20 C.F.R. §§ 404.1520a(c)(2), 416.920a(c)(2). This is completed by comparing the presence of medical findings and the rating of functional loss against the paragraph A and B criteria of the Listing of the appropriate mental disorders. *See id.* If there is a severe impairment, but the impairment does not meet or equal the listings, then the Commissioner must prepare an RFC assessment. *See* 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3).

## IV. Discussion

Gresham argues that the ALJ erred in determining her RFC.[3] Specifically, Gresham claims that the ALJ based the determination on a misstatement of the opinion of workers' compensation physician Russell Cantrell, M.D.; and cited no other medical evidence to support his finding.

RFC is what a claimant can do despite her limitations, and it must be determined on the

---

[3]Although Gresham alleged mental impairments in addition to her physical impairments, she does not challenge the ALJ's findings with regard to her mental impairments.

basis of all relevant evidence, including medical records, physician's opinions, and the claimant's description of her limitations. *Dunahoo v. Apfel*, 241 F.3d 1033, 1039 (8th Cir. 2001). Although the ALJ bears the primary responsibility for assessing a claimant's RFC based on all relevant evidence, a claimant's RFC is a medical question. *See Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001); *Singh v. Apfel*, 222 F.3d 448, 451 (8th Cir. 2000). Therefore, an ALJ is required to consider at least some supporting evidence from a medical professional. *See Lauer*, 245 F.3d at 704 (some medical evidence must support the determination of the claimant's RFC); *Casey v. Astrue*, 503 F.3d 687, 697 (8th Cir. 2007) (the RFC is ultimately a medical question that must find at least some support in the medical evidence in the record). However, "there is no requirement that an RFC finding be supported by a specific medical opinion." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016).

"It is the ALJ's function to resolve conflicts among the various treating and examining physicians." *Tindell v. Barnhart,* 444 F.3d 1002, 1005 (8th Cir. 2006) (quoting *Vandenboom v. Barnhart,* 421 F.3d 745, 749-50 (8th Cir. 2005) (internal marks omitted)). The opinion of a treating physician will be given "controlling weight" only if it is "well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." *Prosch v. Apfel,* 201 F.3d 1010, 1012-13 (8th Cir. 2000). The record, though, should be "evaluated as a whole." *Id.* at 1013 (quoting *Bentley v. Shalala,* 52 F.3d 784, 785-86 (8th Cir. 1997)). The ALJ is not required to rely on one doctor's opinion entirely or choose between the opinions. *Martise v. Astrue,* 641 F.3d 909, 927 (8th Cir. 2011). Additionally, when a physician's records provide no elaboration and are "conclusory checkbox" forms, the opinion can be of little evidentiary value. *See Anderson v. Astrue,* 696 F.3d 790, 794 (8th Cir. 2012). Regardless of the decision the ALJ must still provide "good reasons" for the

weight assigned the treating physician's opinion. 20 C.F.R § 404.1527(d)(2).

The ALJ must weigh each opinion by considering the following factors: the examining and treatment relationship between the claimant and the medical source, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, whether the physician provides support for his findings, whether other evidence in the record is consistent with the physician's findings, and the physician's area of specialty. 20 C.F.R. §§ 404.1527(c)(1)-(5), 416 .927(c)(1)-(5).

Gresham claims that her disability began on February 10, 2011, when she hit her right elbow on a bread rack while working at a grocery store. Gresham filed a workers' compensation claim as a result of the injury. She was seen by Dr. Cantrell on several occasions from June 2011 through August 2012, at the request of the insurance carrier. (Tr. 334-52.) Gresham alleges an inability to use her right arm due to pain, sensitivity, and numbness she experiences from her shoulder down to her fingers. (Tr. 107-09.)

On June 21, 2012, Dr. Cantrell found that, although Gresham had been diagnosed with RSD by her primary care physician, Gresham did not have any definite objective evidence that would support a diagnosis of CRPS or RSD. (Tr. 334-36, 350.) He indicated that Gresham had sustained a right elbow contusion as a result of her work injury. *Id.* After reviewing additional medical records, including ER records, a negative MRI scan of the right elbow, and a negative response to stellate ganglion nerve blocks, Dr. Cantrell reaffirmed his opinion that Gresham did not have a diagnosis of RSD. (Tr. 333, 350.) Instead, he found that "the majority of her subjective pain complaints are likely related to volitional disuse of her right upper extremity." (Tr. 333.)

On August 8, 2012, Gresham underwent a Functional Capacity Evaluation at the request of

Dr. Cantrell. (Tr. 348.) Gresham was able to lift 10 pounds; carry 15 pounds bilaterally; push 35 pounds bilaterally; and pull 40 pounds bilaterally. *Id.* The therapist felt Gresham's reported pain intensity levels were out of proportion to displayed function, and her heart rate response to activity confirmed she had some "self-limiting behaviors." *Id.* Dr. Cantrell found that Gresham had reached maximum medical improvement. *Id.* Dr. Cantrell assigned limitations "based on her residual pain complaints and performance in the Functional Capacity Evaluation of lifting less than 10 pounds, pushing and pulling less than 30 pounds, and the avoidance of repetitive pinching or grasping with her right hand." (Tr. 349.) No further follow-up was scheduled. *Id.*

Dr. Cantrell provided a detailed explanation of his functional capacity opinions in a subsequent letter dated September 27, 2012. (Tr. 350-52.) He stated that during the course of Gresham's treatment, she participated in physical therapy and experienced improvements in strength and range of motion of her right upper extremity, but continued subjective pain complaints. (Tr. 351.) Dr. Cantrell cited the negative results of objective testing including the MRI of her right elbow, and a triple phase bone scan. (Tr. 350.) He stated that Gresham's prolonged disuse of her right upper extremity "adversely affected her recovery from an otherwise minor injury." (Tr. 351.) Dr. Cantrell explained that the restrictions he suggested in her work capacity result from "prolonged disuse secondary to subjective pain complaints for which there is no objective basis." *Id.*

The ALJ discussed Dr. Cantrell's examinations and opinions. (Tr. 84.) As to Dr. Cantrell's August 2012 opinion, the ALJ stated: "[Dr. Cantrell] summarized that the claimant was essentially capable of a light exertional range of work." (Tr. 84.) The ALJ acknowledged that Dr. Cantrell's opinions were issued "years before the beginning of the relevant period in the instant

case."[4]  *Id.*  She stated that Dr. Cantrell's conclusions were nonetheless "not inconsistent with the other objective evidence of record."  *Id.*  The ALJ indicated that she was assigning Dr. Cantrell's "opinion statements some weight."  *Id.*

Gresham argues that the ALJ's characterization of the lifting limitation suggested by Dr. Cantrell as a "light range of work" is inaccurate.  "Light work" is defined as lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  20 C.F.R. § 404.1567(b).  Sedentary work "involves lifting no more than 10 pounds at a time.."  *Id.* at § 404.1567(a).  As noted above, Dr. Cantrell limited Gresham to lifting less than ten pounds.  (Tr. 349.)  As such, Dr. Cantrell's opinion is consistent with the performance of sedentary, rather than light, work.

Although the ALJ's characterization of Dr. Cantrell's August 2012 opinion was not entirely accurate, the undersigned finds this error was harmless.  First, the ALJ only accorded Dr. Cantrell's opinion "some weight," in light of the fact that Dr. Cantell's opinions were provided approximately two years prior to the relevant period.  Second, the only portion of Dr. Cantrell's opinion that was inconsistent with the performance of light work is the lifting restriction of less than ten pounds.  Notably, Dr. Cantrell only provided this limitation due to Gresham's subjective complaints.  Dr. Cantrell was unequivocal in his opinion that there was no objective basis for Gresham's complaints.

Further, there was substantial other evidence upon which the ALJ based her RFC determination.  The ALJ indicated that she had considered all of the medical evidence, and neither the evidence before the relevant period nor the evidence during the relevant period

---

[4]To be eligible for SSI, Gresham must establish she was disabled while her application was pending.  *See* 42 U.S.C. § 1382c; 20 C.F.R. § 416.330, 416.335.  Thus, the relevant period in the instant case is from April 10, 2014, the date her application was filed, through July 27, 2016, the date of the ALJ's decision.

supports the severity of Gresham's subjective allegations. (Tr. 82.) This evidence is summarized as follows:

Prior to the relevant period, Gresham saw Suresh Krishnan, M.D., for complaints of right extremity pain related to her work injury. (Tr. 388-92.) Dr. Krishnan noted severe allodynia, as well as noticeable swelling and erythema of the hand and forearm. (Tr. 388.) Dr. Krishnan diagnosed Gresham with RSD of the upper limb. (Tr. 391.) He stated that her prognosis was poor, and recommended palliative care. *Id.*

Gresham saw David M. Brown, M.D., at the Orthopedic Center of St. Louis on April 11, 2011, for evaluation and treatment of her right upper extremity. (Tr. 321-22.) Upon examination, there was no visible abnormality of the right upper extremity. (Tr. 321.) Gresham complained of pain to palpation throughout the extremity from the upper arm down to the hand that was not localized to any specific location. (Tr. 322.) Dr. Brown stated that Gresham's examination was negative or nonspecific for a specific upper extremity diagnosis that would explain her symptoms. (Tr. 322.) He recommended Gresham obtain a second opinion from a pain management physician. *Id.*

Gresham saw pain management physician Rahul Rastogi, M.D., on August 8, 2011, for an evaluation. (Tr. 402-03.) Dr. Rastogi indicated that Gresham's primary care physician diagnosed her with RSD, but workers' compensation disagreed with this diagnosis. (Tr. 402.) Upon examination, Dr. Rastogi noted diminished 3/5 grip strength and decreased range of motion of the right upper extremity; and allodynia in the right upper extremity from the hand to the anterior right shoulder. *Id.* Dr. Rastogi found that the criteria for RSD of the right upper extremity were fulfilled due to the trauma to the right elbow, pain and allodynia in the right upper extremity, intermittent color changes, and fluctuation edema with changes in the weather. (Tr.

404.) He recommended a repeat nerve block and physical therapy. *Id.* Dr. Rastogi noted that he may consider a spinal cord stimulator trial if conservative management fails. *Id.*

On May 29, 2013, Gresham presented to David T. Volarich, D.O., for an Independent Medical Examination. (Tr. 373-80.) Upon examination, Dr. Volarich noted a ten percent loss of motion in the right shoulder. (Tr. 377.) Tests for neuropathy were negative. *Id.* Dr. Volarich noted that Gresham's right arm was slightly reddened compared to the left arm, and there was ¼ diffuse swelling in the right forearm, wrist, and hand. *Id.* Dr. Volarich diagnosed Gresham with right elbow contusion complicated by the development of chronic regional pain syndrome. (Tr. 378.) He recommended that Gresham undergo vocational assessment to assist her in returning to the open labor market. (Tr. 379.)

Gresham returned to Dr. Brown for a second Independent Medical Evaluation on October 29, 2013. (Tr. 472-75.) Upon examination, Gresham subjectively complained of pain to light touch from her shoulder down to her fingertips. (Tr. 474.) Dr. Brown explained, "Essentially wherever I lightly touch causes a subjective response of pain. There is no associated facial grimacing." *Id.* Dr. Brown stated there was no evidence of edema, no skin or color changes of the right upper extremity, and no notable atrophy. *Id.* He noted that there was a disagreement among the examining physicians regarding whether Gresham had RSD. (Tr. 475.) Dr. Brown pointed out that all objective diagnostic studies, including x-rays, an MRI, and a bone scan, have been unremarkable. *Id.* Dr. Brown stated that, based on his second evaluation, he saw no evidence of any sudomotor, vasomotor, or trophic changes of the upper extremity that would support a diagnosis of RSD. (Tr. 475.) He indicated that Gresham's "severe subjective complaints" did not correlate with a specific upper extremity diagnosis, and there was no objective anatomical basis for any partial disability as a result of her elbow contusion. *Id.*

The evidence during the relevant period is as follows: Gresham underwent a consultative examination with Bobby Enkvetchakul, M.D., at the request of the State agency, on August 21, 2014. (Tr. 502-04.) Upon examination, Gresham would not move her right upper extremity; although she demonstrated she was able to use it while Dr. Enkvetchakul was taking her history. (Tr. 503.) Gresham's right arm was "essentially normal" in appearance. *Id.* Dr. Enkvetchakul indicated that he had reviewed the medical evidence, and based on upon his examination and the other medical evidence, Gresham's complaints of right upper extremity pain are subjective, nonspecific, and of unclear etiology. *Id.* Gresham's examination was "simply subjective in nature without objective evidence of a specific pathology." *Id.* Gresham reported that her right arm swells and changes color, but Dr. Enkvetchakul could not find any evidence of those conditions other than "maybe a little bit of edema in the digits of the right hand that could just be from disuse." *Id.* He stated that he could not find any evidence in his examination or the other medical evidence to support a diagnosis of RSD or CRPS. (Tr. 504.) As to Gresham's work capabilities, Dr. Enkvetchakul was "unable to find evidence of any pathology that would require duty restrictions." *Id.* He continued as follows:

> Ms. Gresham is subject to pain complaints that might worsen with activity whether at work or at home, but that is not sufficient to substantiate the need for activity limitations. Therefore, I see no reason she could not sit during a normal eight hour workday given the usual breaks. I can't find any evidence for any limitations in standing, walking, or carrying. There should be no limitations in reaching. I see no reason she could not lift in an unrestricted manner, other than her self-expressed limitations. She should have no trouble handling objects, or speaking, or hearing. Long periods of travel might be symptomatically limiting for her. I see no reason she could not get herself to and from a workplace. Ms. Gresham is taking some medication that can affect her motor skills and judgment, so she should avoid any safety sensitive type activities while taking those medications.

(Tr. 504.)

On March 3, 2015, Gresham presented to family physician Lewis A. Meyerson, M.D., with

complaints of anxiety, asthma, reflux, and right upper limb pain. (Tr. 507.) Dr. Meyerson diagnosed Gresham with RSD of the right upper limb. *Id.* On September 9, 2006, Dr. Meyerson authored a letter addressed "To Whom it May Concern," stating he had seen Gresham on that date. (Tr. 55.) Dr. Meyerson stated that Gresham has RSD in the right extremity and "has limited use of this due to pain." *Id.* He further stated that Gresham has had "multiple treatments with failure to improve function." *Id.*

Gresham also received treatment periodically from Jessica E. Niehoff, APRN-CNP, a nurse practitioner at Dr. Meyerson's office, for various complaints including her RSD. (Tr. 492-95, 505-06, 508-09.) Ms. Niehoff prescribed medication for Gresham's RSD and pain, which Gresham reported provided some relief. *Id.*

The ALJ indicated she was assigning "little weight" to the opinion of Dr. Enkvetychakul that Gresham had no significant limitations. (Tr. 85.) The ALJ explained that Dr. Enkvetychakul's conclusion is "not fully consistent with the overall evidence of record, such as the claimant's reduced activities of daily living and subjective pain complaints." *Id.* She also noted that Dr. Enkvetychakul only examined Gresham on one occasion. *Id.*

The ALJ properly weighed the medical opinion evidence in this case. She accorded some weight to Dr. Cantrell's opinions and examination findings, as he had examined Gresham on multiple occasions. As previously discussed, the value of Dr. Cantrell's opinions was limited by the fact that he treated Gresham prior to the relevant period. The ALJ assigned minimal weight to Dr. Enkvetychakul's opinions because they were based on a one-time examination and did not consider Gresham's subjective complaints of pain. There was substantial disagreement amongst the various examining physicians in this matter regarding Gresham's diagnoses and resulting limitations. The ALJ, consistent with her duty, weighed the opinions and resolved these conflicts.

To the extent Gresham asserts that the components of the ALJ's RFC determination are not directly linked to specific medical opinions, an ALJ "is not required to rely entirely on a particular physician's opinion or choose between the opinions [of] any of the [Plaintiff's] physicians." *Martise,* 641 F.3d at 927.

The ALJ's RFC determination is based on substantial evidence on the record as a whole. Notably, the only physician to exam Gresham and provide specific functional limitations during the relevant period—Dr. Enkvetychakul—found that there was no objective basis for Gresham's complaints and Gresham had no resulting functional limitations. Despite this evidence, the ALJ credited Gresham's subjective complaints of pain to some extent in limiting her to a reduced range of light work. This determination is consistent with the examination findings of Drs. Cantrell, Brown, Volarich, and Enkvetychakul. The ALJ's decision not to fully credit Gresham's subjective complaints is supported by the findings in the medical record that her reported pain intensity levels were out of proportion to displayed function and reflected self-limiting behaviors. In restricting Gresham to a limited range of light work, the ALJ adequately accounted for the supportable degree of limitation due to Gresham's impairments. The ALJ then found, consistent with the testimony of a vocational expert, that Gresham could perform the positions of information clerk, hostess, and ticket taker.

Accordingly, Judgment will be entered separately in favor of Defendant in accordance with this Memorandum.

*/s/ Abbie Crites-Leoni*
ABBIE CRITES-LEONI
UNITED STATES MAGISTRATE JUDGE

Dated this 25th day of March, 2019.